

FILED
05 JUN 27 PM 3:47

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:                              ) Case No. 04-31993-D-12L
                                    )
                                    ) D.C. No. CWC-9
                                    )
WILLIAM A. TOSO, dba                ) Chapter 12.
ARNOLD TOSO AND SONS,               )
                                    ) Date:  May 19, 2005
                                    ) Time:  1:30 p.m.
                                    ) Place: Hon. Thomas C. Holman
          Debtor(s).                )        Courtroom 34
                                    )        Sixth Floor
                                    )        United States Courthouse
                                    )        501 I Street
                                             Sacramento, CA 95814

**MEMORANDUM DECISION**

This matter, the confirmation hearing on debtor's First Amended Chapter 12 Plan filed March 21, 2005, as subsequently modified (the "Plan"), initially came on for hearing on May 3, 2005. The only objection to confirmation was filed by Bank of Stockton (the "Bank"). The Chapter 12 trustee supports confirmation. Neither the debtor, nor the Chapter 12 trustee nor the Bank filed a separate statement of disputed material fact under Local Bankruptcy Rule 9014-1(f)(1)(ii) and (iii). Therefore, the debtor, the Chapter 12 trustee and the Bank consented to the resolution of the issues pursuant to Fed.R.Civ.P. 43(e).

Nevertheless, the court continued the hearing to May 19, 2005 for an evidentiary hearing on two issues: (1) the feasibility of the Plan, specifically whether the debtor has

-1-

256

arranged financing sufficient to allow him to farm his land successfully, and (2) the adequacy under 11 U.S.C. § 1225(a)(5)(B)[1] of the interest rate proposed with respect to the Class 2A and 2B claims held by objecting creditor Bank.

After the evidentiary hearing on May 19, 2005, the court requested additional post-hearing briefing on one issue - the Bank's claimed security interest the post-petition asparagus beds and crops. The matter was taken under advisement on June 7, 2005, the expiration of the time for filing the post-hearing briefs. This memorandum constitutes the court's findings and conclusions pursuant to Bankruptcy Rules 9014(c) and 7052, incorporating F.R.Civ.P. 52.

Because the confirmation criteria of section 1225 are nearly identical to those of Section 1325, "case law interpreting section 1325 will be relevant in interpreting section 1225." 8 Lawrence P. King, et al., Collier on Bankruptcy ¶ 1225.01 (15th ed. 2005); In re Kjerulf, 82 B.R. 123, 126 (Bankr D. Or. 1987)(J.Perris)(citing legislative history that "[c]hapter 12 was closely modeled after existing chapter 13, with alterations of provisions that are inappropriate for family farmers.")

Except where a different burden has been allocated, e.g., on the issue of the appropriate interest rate under 11 U.S.C. § 1325(a)(5), the debtors bear the burden of establishing that the requirements for confirmation are met. In re Buckingham, 197

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

B.R. 97, 102-103 (Bankr. D.Mont. 1996); <u>In re Garako Farms, Inc.</u>, 98 B.R. 506, 509 (Bankr. E.D.Cal. 1988).

The Bank makes the following objections:

1. "[T]he Plan is unclear...whether the debtor is committing all of his net disposable income to fund the Plan or whether he is limiting his contribution to the projected 'margin' set forth on Exhibit '1' to the Plan." The Bank cites no authority for this objection, but the court interprets it as an objection under Section 1225(b). Under the Plan, a portion of Claim No. 6 and a portion of Claim No. 9 filed by the Bank are treated as unsecured. Thus, the Bank is the holder of unsecured claims in Class 5 under the Plan and has standing to raise a Section 1225(b) objection. The Bank contends that, if it objects on this basis, as it has, then the Plan cannot be confirmed unless it either (A) provides for payment in full of the Bank's unsecured claims, or (B) requires the debtor to devote all of his actual disposable income, whatever it may turn out to be, to the plan for at least thirty-six months. The Bank has not challenged the projections filed March 21, 2005 as Exhibits 1 and 2 in support of the Plan. This objection is overruled. Section 1225(b) is satisfied if the Plan requires debtor to devote all of his <u>projected</u> disposable income to the Plan for a three year period (or longer if necessary). <u>Anderson v. Satterlee (In re Anderson)</u>, 21 F.3d 355 (9th Cir. 1994) (interpreting Section 1325(b)). The debtor has met this requirement.

2. "[T]he Plan is unclear in that it fails to specify what

rights and remedies are available to the Bank should the Debtor fail to perform on his obligations to the Bank under the Plan...." The Bank has not provided any authority in support of this objection. The objection is overruled. The Plan states that the Bank retains all rights set forth in the Bank's loan documentation, except as modified by the Plan. (p. 2, lines 23-26).

    3. The Plan is not feasible for three reasons. First, the debtor has not provided evidence of financing to allow him to farm his property in order to perform under the Plan. This objection was a subject of the evidentiary hearing on May 19, 2005. At that hearing, the debtor provided testimony showing the existence of unsecured financing arrangements to provide for operational expenses. This objection is therefore overruled. Second, the Plan projects the need for "Bank Debt" but the debtor's income and expense projections do not provide for the payment of interest on "Bank Debt." The debtor's response to the Bank's objection states that the term "Bank Debt" was a "misnomer" and that the projections should be read to refer to "External Unsecured Financing." As set forth above, the debtor has shown at the evidentiary hearing on May 19, 2005 that such financing is available. This objection is therefore overruled. Third, the Bank believes that the debtor's projections of 18,700 cartons of asparagus and $31.00 per carton are "unrealistically high." Actually, debtor's Exhibit 1 projected prices of $24.00 to $29.00 per carton. In any event, the evidence at the

evidentiary hearing on May 19, 2005 showed that the projected number of cartons might be high, but that the projected prices per carton were low. Instead of 18,700 cartons, the debtor testified that he expects to harvest 13,500 to 14,000 cartons of asparagus and that the price per carton will be $35.00. Thus, the original projections for asparagus ($487,878.00) will actually be $472,500.00 to $490,000.00. The lower number of cartons and the higher price (which the Bank acknowledged in its Supplemental Objection To Plan filed May 6, 2005) essentially offset each other. The debtor's projected asparagus revenue remains constant - $487,878.00 versus $481,250.00 (the latter figure representing the average revenue based on 13,750 cartons). This objection is overruled.

4. The Plan fails to provide for the Bank's claimed security interest in the debtor's post-petition asparagus crops. This objection is sustained. This objection was the subject of post-hearing briefing. The testimony at the May 19, 2005 evidentiary hearing was that asparagus grows in beds that produce commercial crops over a period of ten to twelve years. The asparagus beds on debtor's real property are seven to eight years old; thus, they were planted before August 6, 2004, the date of the bankruptcy filing. The 2004 asparagus crop had been harvested and sold by the time of the filing of the case. The 2005 crop did not first appear until the Spring of 2005, well after the filing. Nevertheless, the post-petition asparagus constitutes crops as defined in the Agricultural Security

Agreement dated June 27, 2002 (the "Security Agreement"). A copy of the Security Agreement is attached to the Exhibits To Supplemental Objection To Plan filed by the Bank of May 6, 2005. In re Dettman, 84 B.R. 662 (9th Cir. BAP 1988); In re Beck, 61 B.R. 671 (Bankr. D.Neb. 1985). The Bank's security interest in crops includes rights in proceeds of the crops. Cal. Comm. Code §§ 9203(f) and 9315 (West 2002 & Supp. 2005). Under 11 U.S.C. § 552(b)(1), the Bank's security interest under the Security Agreement extends to all collateral acquired by the debtor prior to the bankruptcy filing and to all proceeds, product, offspring, or profits acquired by the estate after the commencement of the case, "except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." The debtor presented no evidence sufficient to support an order that the Bank's security interest should not, based on the equities of the case, extend to post-petition asparagus crops produced by the existing asparagus beds. The court's ruling on this objection is made without prejudice to the debtor's ability to bring further proceedings to attempt to show such equities under Section 552(b), or to attempt to surcharge the Bank's collateral under Section 506(c) or to assert other rights.

5. The Plan fails the best interests of creditors test because the "supplemental revenue," meaning the excess asparagus revenue assumed to arise from the $35.00 per carton price applied to the originally projected 18,700 cartons, should be applied to payments to Class 5. This objection is overruled. First, this

objection was made only if the court disagreed with the Bank's contention as to its claimed security interest in the post-petition asparagus crops. The Bank's objection as to that security interest is sustained above. Second, there is no "excess revenue." As set forth above, the actual harvest was 13,500 to 14,000 cartons according to the testimony at the evidentiary hearing on May 19, 2005. The higher price only offset the lower yield.

Because the court has sustained the Bank's objection regarding the elimination of its claimed security interest in the post-petition asparagus crops, the debtor has failed to carry his burden of showing compliance with all of the requirements of 11 U.S.C. § 1225(a), specifically 11 U.S.C. § 1225(a)(5). Therefore, confirmation is denied without prejudice to the debtors' ability to bring further proceedings to address that objection. The court will issue a separate order.

Dated: JUN 27 2005

_____
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

**Attorney for Debtor**
CARL W. COLLINS, ESQ.
ATTORNEY AT LAW
1127-12TH STREET, SUITE 202
P.O. BOX 3291
MODESTO, CA  95353

**Debtor**
WILLIAM A. TOSO
3312 LARCHMONT DRIVE
STOCKTON, CA  95209

**Bankruptcy Trustee**
LAWRENCE J. LOHEIT
TRUSTEE
P.O. BOX 2889
SACRAMENTO, CA 95812

OFFICE OF THE U.S. TRUSTEE
501 "I" STREET, SUITE 7-500
SACRAMENTO, CA 95814

**Request for Special Notice**
ALPINE PACKING COMPANY, INC.
C/O KATHLEEN M. ABDALLAH, ESQ.
KROLOFF, BELCHER, SMART, et al.
7540 SHORELINE DRIVE
P.O. BOX 692050
STOCKTON, CA  95269-2050

**Request for Special Notice**
RICHARD AARON VIGNOLO
BARBARA R. RUSSELL AND THOMAS J. BURNS
THOMAS J. BURNS AND MARY JEAN BURNS
C/O JEANNE M. ZOLEZZI, ESQ.
HERUM CRABTREE BROWN
2291 W. MARCH LANE, SUITE B100
STOCKTON, CA  95207

**Request for Special Notice**
WILLIAM C. LEWIS, ESQ.
LAW OFFICES OF WILLIAM C. LEWIS
510 WAVERLEY STREET
PALO ALTO, CA  94301-2009

DATED: 6/28/05   BY: _____
                       Deputy Clerk
                       Susan Wolny

EDC 3-070 (New 4/21/00)